# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DANELL C.-J., | * |
| | * |
| Plaintiff, | * |
| | *      Civil No. TMD 18-1194 |
| v. | * |
| | * |
| | * |
| ANDREW M. SAUL, | * |
| Commissioner of Social Security, | * |
| | * |
| Defendant.[1] | * |
| | *********** |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Plaintiff Danell C.-J. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 20).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 17) is **GRANTED**.

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

# Background

On March 29, 2017, Administrative Law Judge ("ALJ") Charles Woode held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 12-31. The ALJ thereafter found on April 18, 2017, that Plaintiff was not disabled from her alleged onset date of disability of May 2, 2013, through the date of the ALJ's decision. R. at 56-76. In so finding, the ALJ found that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. R. at 63. The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She cannot climb ladders, ropes, or scaffolds. She should avoid even moderate exposure to temperature extremes and pulmonary irritants. Mentally, she is capable of performing simple, routine, and repetitive tasks. She can have occasional or superficial interaction with co-workers and supervisors but no contact with the public.

R. at 63-64.[3] In light of this RFC and the VE's testimony, the ALJ found that, although Plaintiff could not perform her past relevant work, she could perform other work, such as a hand packer, assembler, or sorter. R. at 69-70. The ALJ thus found that Plaintiff was not disabled from May 2, 2013, through April 18, 2017. R. at 70-71.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on April 24, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* "If someone can do light work, [the Commissioner determines] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**IV**

**Discussion**

Plaintiff contends that the ALJ failed to build an accurate and logical bridge from the ALJ's findings at step three of her moderate limitations in concentrating, persisting, or maintaining pace to the mental RFC assessment at steps four and five. Pl.'s Mem. Supp. Mot. Summ. J. 10-14, ECF No. 17-1. She then argues that the ALJ improperly accounted for her moderate limitations in interacting with others in the RFC assessment. *Id.* at 14-17. Plaintiff also maintains that the ALJ failed to weigh and evaluate properly the medical opinion evidence. *Id.* at 17-24. She finally argues that the ALJ failed to resolve conflicts between the VE's testimony and the *Dictionary of Occupational Titles*[5] (the "DOT"). *Id.* at 24-28. For the reasons discussed below, the Court remands this case for further proceedings.

**A.    ALJ's RFC Assessment**

Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

---

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to

simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, under *Mascio*, "once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *McLaughlin v. Colvin*, 200 F. Supp. 3d 591, 600 (D. Md. 2016) (quoting *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015)).

1. **Plaintiff's Moderate Limitations in Interacting with Others**

Plaintiff contends that the ALJ's RFC assessment failed to account adequately for her moderate limitations in interacting with others. Pl.'s Mem. Supp. Mot. Summ. J. 14-17, ECF No. 17-1. She specifically argues that the ALJ failed to explain how the limitation in the ALJ's RFC assessment to "occasional or superficial interaction with co-workers but no contact with the public" accounts for Plaintiff's ability to respond appropriately or on a sustained basis to others. *Id.*

The functional area of interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(2). Examples of the ability to relate to and work with others include

> cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation;

9

understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

*Id.*

Here, the ALJ's RFC assessment properly accounted for Plaintiff's difficulties in interacting with others, and the ALJ sufficiently explained how the limitation accounted for her difficulties. *See Juanashe C. v. Comm'r, Soc. Sec. Admin.*, Civil Action No. ADC-18-2909, 2019 WL 3208682, at *7 (D. Md. July 16, 2019). The ALJ determined at step three that, "[i]n interacting with others, [Plaintiff] has moderate limitations." R. at 63. The ALJ explained that

> [Plaintiff] alleged that she has difficulty engaging in social activities and does not like to spend time with people outside her family. However, according to her statements, [Plaintiff] is also able to shop, spend time with friends and family, take public transportation, and live with others. Finally, the medical evidence shows that [Plaintiff] had good interactions with non-medical staff and appeared comfortable during appointments.

R. at 63. The ALJ then found that Plaintiff's RFC limited her to "occasional or superficial interaction with co-workers and supervisors but no contact with the public." R. at 64. Restrictions on interactions with groups of individuals, such as co-workers, supervisors, and members of the public, correspond with a finding of moderate difficulties in social functioning. *Juanashe C.*, 2019 WL 3208682, at *7. The ALJ's RFC assessment thus properly addressed Plaintiff's difficulties in this area. *See id.*

Plaintiff argues, however, that the ALJ's limitation for her interaction with others is "contested" by her treating psychiatrist, Dr. Saeed, who opined in February 2017 that, in a competitive environment on a sustained basis, she would experience a substantial loss of ability to respond appropriately to supervision, co-workers, and usual work situations, and that she had marked limitations in maintaining social functioning. Pl.'s Mem. Supp. Mot. Summ. J. 16, ECF

10

No. 17-1 (citing R. at 483). As discussed below, however, the ALJ properly assigned "some weight" to Dr. Saeed's opinion and was not required to adopt his findings. *See Juanashe C.*, 2019 WL 3208682, at *8.

Plaintiff then contends that the ALJ's limitation was "inherently flawed" because "a claimant who is limited to occasional interaction . . . would be unable to sustain the mental ability to interact with co-workers and supervisors on a regular and continuing basis." Pl.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 17-1. "Plaintiff appears to understand SSR 96-8p to mean that a claimant must be able to perform specific tasks continuously for a full work day, but this interpretation is misplaced." *Juanashe C.*, 2019 WL 3208682, at *8. "Limitations to 'frequent' or 'occasional' performance of work activities are expressly contemplated by the regulations, and the ALJ did not err in including such a limitation in the RFC." *Id.* (citations omitted). "Thus, for the reasons stated, the ALJ's RFC assessment properly accounted for Plaintiff's moderate limitation in interacting with others and the ALJ sufficiently explained how the limitation accounted for Plaintiff's difficulties. Accordingly, remand on this issue is unwarranted." *Id.*; *see* R. at 63, 68-69.[7]

---

[7] Plaintiff suggests that a limitation to occasional or superficial interaction with co-workers and supervisors and no contact with the public "does not account for her ability to respond *appropriately* and *effectively* to co-workers, supervisors and the public." Pl.'s Mem. Supp. Mot. Summ. J. 16, ECF No. 17-1. She, however, "cites no authority suggesting that a limited ability to respond appropriately to work pressures in a work setting is work preclusive, nor does she explain how the RFC fails to adequately account for [such a] limitation" in responding appropriately and effectively to co-workers, supervisors, and the public. *McLaughlin v. Berryhill*, No. 5:16-CV-01512, 2017 WL 2257593, at *11 (N.D. Ohio May 4, 2017), *report and recommendation adopted sub nom. McLaughlin v. Comm'r of Soc. Sec.*, No. 5:16CV1512, 2017 WL 2241515 (N.D. Ohio May 22, 2017).

11

### 2. Plaintiff's Moderate Limitations in Concentrating, Persisting, or Maintaining Pace

The Court remands this case, however, because the ALJ's limiting Plaintiff's RFC to "simple, routine, and repetitive tasks," with "occasional or superficial interaction with co-workers and supervisors but no contact with the public" (R. at 28, 63-64), does not account for her moderate limitations in concentrating, persisting, or maintaining pace. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) ("'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence."); *Mascio*, 780 F.3d at 638; *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Juanashe C.*, 2019 WL 3208682, at *4-6. Although Defendant contends that the error is harmless (Def.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 20-1),

> [t]he Court cannot classify the error as harmless because the ALJ's written decision is insufficient to permit adequate review. Because the ALJ's RFC does not account for all of [Plaintiff's] limitations, the Court cannot find that the RFC provides an accurate description of the work that [she] is able to do on a regular and continuing basis. In light of the Fourth Circuit's clear guidance in *Mascio*, this case must be remanded so that the ALJ can explain how [Plaintiff's] limitations in the areas of concentration, persistence, and pace can be incorporated into the RFC assessment, or why no additional limitation is necessary to account for these difficulties.

*Lawson v. Berryhill*, Civil No. TJS-17-0486, 2018 WL 1135641, at *5 (D. Md. Mar. 1, 2018).

In short, the inadequacy of the ALJ's analysis frustrates meaningful review. Remand under the fourth sentence of 42 U.S.C. § 405(g) thus is warranted. *See Monroe*, 826 F.3d at 189.

### B. ALJ's Evaluation of Opinion Evidence

Plaintiff further contends that the ALJ erred in assigning only "some weight," "less weight," or "little weight" to all of the medical opinions in the record. Pl.'s Mem. Supp. Mot. Summ. J. 17-22, ECF No. 17-1. She argues that the ALJ's failure to define "some weight" or "little weight" requires remand under *Monroe* and *Rapczynski v. Colvin*, Civil Action No. WGC-15-2639, 2016 WL 4537765 (D. Md. Aug. 31, 2016). *Id.* at 21-22. Plaintiff's argument is unavailing, however, because "remand in *Monroe* and *Rapczynski* was predicated on the ALJ's failure to explain the reasons for the various weights given, rather than the failure to define the terms used." *Juanashe C.*, 2019 WL 3208682, at *9 n.3 (citing *Monroe*, 826 F.3d at 191; *Rapczynski*, 2016 WL 4537765, at *12-13).

Plaintiff contends, however, that "it is unclear what [sic] medical opinions were rejected and what [sic] opinions were persuasive in determining [her] physical and mental RFC." Pl.'s Mem. Supp. Mot. Summ. J. 20, ECF No. 17-1.

> It is clear from the regulations that "[t]he RFC determination is an issue ultimately reserved for the ALJ" and that "[a]n ALJ must base the RFC analysis on all of the relevant medical and other evidence and must assign weight to any relevant medical opinions." Here, the ALJ properly considered each medical opinion in the record and cited substantial evidence to support [his] findings of [little, less, or some weight] in accordance with the regulations. The ALJ was not required to "parrot a single medical opinion, or even assign great weight to any opinions, in determining [the] RFC assessment" and, thus, [he] did not err in declining to do so.

*Juanashe C.*, 2019 WL 3208682, at *9 (alterations in original) (citations omitted); *see* R. at 67-69.

Plaintiff then asserts that the ALJ erred in weighing the opinion of Dr. Saeed, her treating psychiatrist. Pl.'s Mem. Supp. Mot. Summ. J. 23-24, ECF No. 17-1. When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the

13

treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 404.1527. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 404.1527(c).

"In general, an ALJ should accord 'more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s).'" *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018) (alterations in original) (quoting 20 C.F.R. § 404.1527(c)(2)). A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754

14

F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 404.1527(c)(4); *see also Dunn*, 607 F. App'x at 268.

Here, the ALJ gave "some weight" to Dr. Saeed's February 2017 opinion on a medical-source-statement form because of "the inconsistency with the evidence of record and the unreliable nature of the opinion form." R. at 68; *see* R at 482-86. The ALJ found Dr. Saeed's opinion to be "less reliable, given its form and nature"; the form was "very leading," and "the answers to this check-off form [were] inconsistent with his records, which showed significant improvement with medications." R. at 68. The ALJ also found Dr. Saeed's responses on the form to be "inconsistent with reports to other providers about the efficacy of [Plaintiff's] psychiatric treatment." R. at 68. Under SSR 96-2p, "a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight." *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Thus, "SSR 96-2p did not require the ALJ

15

to make any additional findings to determine that [Dr. Saeed's] opinions were not entitled to controlling weight." *Id.* Moreover, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that [the ALJ] concluded that [Dr. Saeed's] opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's opinion less than controlling weight. *Bishop*, 583 F. App'x at 67. In light of the persuasive contrary evidence reviewed by the ALJ, Plaintiff's contention that the ALJ erred by rejecting Dr. Saeed's opinion is without merit. *See Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) (treating physician's treatment notes that were inconsistent with his contrary opinion constituted substantial evidence to support ALJ's decision not to give controlling weight to physician's opinion); *Dunn*, 607 F. App'x at 270-71 (determining that substantial evidence supported ALJ's decision to give limited weight to opinions of claimant's treating psychiatric sources because their opinions were inconsistent with their treatment notes); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (concluding that ALJ properly discounted treating physician's opinion as conclusory because it consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam) (finding that ALJ did not err in giving physician's opinion little weight where physician's opinion was not consistent with her own progress notes); *Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because record contained persuasive contradictory evidence; opinion was conclusory and based on claimant's subjective reports, and treating physician's own notes contradicted his opinion). In short, substantial evidence supports the weight given by the ALJ to Dr. Saeed's opinion, as "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

16

findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding that ALJ permissibly rejected psychological evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions).

C.   **ALJ's Consideration of VE's Testimony**

Plaintiff finally asserts that the ALJ did not identify conflicts between the VE's testimony and the DOT and did not obtain a reasonable explanation resolving these conflicts. Pl.'s Mem. Supp. Mot. Summ. J. 24-28, ECF No. 17-1. As noted in Part II above, the Commissioner bears the burden at the final step of the five-step sequential evaluation process used to evaluate a claimant's disability claim. *Pearson*, 810 F.3d at 207. To determine whether sufficient other work exists for the claimant in the national economy, the ALJ relies primarily on the DOT. *Id.* The ALJ may also use a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* SSR 00-4p requires that the ALJ inquire, on the record, whether the VE's testimony conflicts with the DOT, and also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the VE's testimony and the DOT. *Id.* at 207-08 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). The ALJ must, by determining if the VE's explanation is reasonable, resolve conflicts before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled. *Id.* at 208 (citing same).

An ALJ has not fulfilled his affirmative duty merely because the VE responds "yes" when asked if his testimony is consistent with the DOT. *Id.* Rather, the ALJ independently must identify apparent conflicts between the VE's testimony and the DOT. *Id.* at 209. "[I]n many

17

cases, testimony may only *appear* to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists." *Id.* A VE's testimony that apparently conflicts with the DOT "can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209-10 (citing SSR 00-4p, 2000 WL 1898704, at *2).

Plaintiff first contends that the DOT "does not describe positions in terms of only 'occasional or superficial interaction with co-workers and supervisors but no contact with the public'" and that "the ALJ never elicited a reasonable explanation for the discrepancy." Pl.'s Mem. Supp. Mot. Summ. J. 26, ECF No. 17-1. According to Plaintiff, "the ALJ should have elicited from the VE an explanation as to whether the positions of hand packer, assembler, and sorter do, in fact, require only occasional or superficial interaction with coworkers and supervisors but no contact with the public." *Id.*

"Each job listed in the DOT is described by reference to various components. One component is 'Worker Functions.' The worker function labeled 'People' expresses the degree of interaction with other people that the job requires." *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). All three jobs identified by the VE (hand packer, assembler, and sorter) have a people rating of 8, which, according to Appendix B of the DOT, 1991 WL 688701, means that they require "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.)" The job descriptions for these positions, however, indicate that contact with people is rather limited. The DOT description for hand packer states:

> Assembles dental floss packages: Mounts dental floss cutter in container top, using jig, and locks cutter in place, using cap. Cuts away excess floss from roll, using scissors. Positions roll in bottom half of container and mounts cutter top.

> Threads end of dental floss through cutting mechanism. Places completed unit in shipping container.

DOT 920.687-082, 1991 WL 687981 (listed as "dental floss packer"). The description for assembler states: "Assembles bicycles on assembly line, performing one or a combination of tasks as described under ASSEMBLER, BICYCLE (motor-bicycles) I, using handtools and portable power tools. May assemble and package bicycle subassemblies, such as shift levers, axles, and reflectors and be designated Bicycle Subassembler (motor-bicycles)." DOT 806.687-010, 1991 WL 681498 (listed as "assembler, bicycle II"). The description for sorter states: "Sorts and bags scrap leather to salvage usable pieces for further processing: Gathers scrap leather from cutting operations. Sorts trimmed material according to kind and use. Places sorted scrap in bags." DOT 788.687-106, 1991 WL 681197 (listed as "scrap sorter"). The Court does not see any conflict between the DOT descriptions of the designated jobs and Plaintiff's restriction to only occasional or superficial interaction with co-workers and supervisors and no contact with the public. *See Hackett*, 395 F.3d at 1175-76. Plaintiff's argument that the ALJ was required to resolve an apparent conflict between the VE's testimony and the DOT's description of these jobs is thus without merit.

Plaintiff then maintains that, contrary to the VE's testimony, a limitation to simple, routine, and repetitive tasks is inconsistent with the performance of the job of hand packer. Pl.'s Mem. Supp. Mot. Summ. J. 27-28, ECF No. 17-1. The job of hand packer identified by the VE (R. at 28) involves a DOT reasoning level of two. *See* DOT 920.687-082, 1991 WL 687981. According to Appendix C of the DOT, 1991 WL 688702, level-two reasoning skills are defined as the skills to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

"The Fourth Circuit has found that an apparent conflict exists between a limitation to 'short, simple instructions' and a Reasoning Level of 2." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-18-3447, 2019 WL 3935376, at *4 (D. Md. Aug. 20, 2019) (citing *Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019); *Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018) (per curiam)). The ALJ's error in failing to resolve an apparent conflict regarding the occupation of hand packer is arguably harmless, however, because the other occupations identified by the VE (assembler and sorter) only require level-one reasoning. *See* DOT 806.687-010, 1991 WL 681498; DOT 788.687-106, 1991 WL 681197; *see also Rebecca B. v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-18-3356, 2019 WL 3936815, at *4 (D. Md. Aug. 20, 2019); *Juanashe C.*, 2019 WL 3208682, at *11. In any event,

> because this case is being remanded on other grounds, the Court need not decide if the limitation to "simple, routine, and repetitive tasks" is analogous to the limitation in *Thomas* to "short, simple instructions," 916 F.3d at 313. However, on remand, the ALJ can consider whether an apparent conflict may exist, and whether an explanation should be elicited from a VE to explain any apparent conflict.

*Geraldine S.*, 2019 WL 3935376, at *4.

## V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 17) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: September 10, 2019

/s/
Thomas M. DiGirolamo
United States Magistrate Judge